FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 2 2 2005

at 3 o'clock and 09 min P M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO. | Civil No. 04-00100 (ACK/BMK) |
| Plaintiff, | |
| vs. | |
| RICHELLE M. THOMASON, RICHARD H. THOMASON, FIDELITY MANAGEMENT, INC., AND THE ASSOCIATION OF APARTMENT OWNERS OF TWIN TOWERS, INC., | |
| Defendants. | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT THE ASSOCIATION OF APARTMENT OWNERS OF TWIN TOWERS, INC. AND GRANTING MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS RICHELLE M. THOMASON AND FIDELITY MANAGEMENT, INC.**

BACKGROUND

I. Factual History

Defendant The Association of Apartment Owners of Twin Towers, Inc. ("the Association") is the representative of owners of a residential condominium complex know as Twin Towers Condominium.[1] From 1990 through 2000, Defendant Fidelity Management, Inc. ("Fidelity"), by and through its principal, Defendant Richelle M. Thomason ("Richelle"), served as managing

---

[1] The facts recited herein are alleged by Plaintiff. The Court notes that Defendant The Association of Apartment Owners of Twin Towers, Inc. failed, contrary to LR 7.4, to file a statement of no opposition to Plaintiff's Motion for Summary Judgment.

agent for the Twin Towers Condominium.  In 1992, in conjunction with the Association's purchase of the fee of the Twin Towers condominium, the Association entered into separate mortgage notes with the eleven remaining owners for repayment of amounts paid on their behalf.  In or about September 1997 and April 1999, Richelle and Fidelity allegedly stole over $140,000 in funds, which they received on behalf of the Association to pay off the mortgage notes of two homeowners.

On June 27, 2001, the Association filed a Verified Complaint ("the June 2001 Complaint") against Fidelity and Richelle.  The June 2001 Complaint also named Nasha Maria Elena Balmoja (allegedly a relative of Richelle), Fidelity's Vice President, and the Association's CPA.  The June 2001 Complaint claimed damages in excess of $150,000 for misappropriation of funds, breach of fiduciary duty, professional malpractice, breach of fiduciary duty by a CPA, fraud, unjust enrichment, and corporate director/officer liability.

Plaintiff alleges that Richelle and Fidelity did not advise it of the June 2001 Complaint.  None of the defendants responded to the June 2001 Complaint and defaults were entered against each in November 2001.  In late November, Defendants Fidelity and Richelle moved to set aside the default entered against them.  On November 30, 2001, prior to the hearing on the motion to set aside the default, the Association entered into a Stipulated

Judgment against Fidelity and Richelle in the amount of $173,997.53. Plaintiff alleges that it did not receive notice of this judgment until February 2002.

On May 27, 2003, the Association filed suit against Richard H. Thomason ("Richard") and others. On July 11, 2003, a First Amended Complaint was filed ("2003 Complaint"). The 2003 Complaint claimed that Richard was liable for Richelle and Fidelity's misappropriation of funds because he failed to advise the Association of his conflict of interest, failed to inform the Association that Richelle had a gambling problem and extraordinary spending habits, failed to investigate Richelle's extraordinary income, and was unjustly enriched by Richelle's embezzlement of funds. The 2003 Complaint also sought punitive damages.

Plaintiff now requests that this Court enter Summary Judgment against the Association finding that it is not obligated to defend or indemnify Richelle and/or Fidelity. Plaintiff also seeks a default judgment against Richelle and Fidelity, who have failed to answer or otherwise appear in this action. There are seven policies of coverage that could arguably provide coverage. Four of the policies were issued to Richard and Richelle: 1) a State Farm Homeowners Policy; 2) a State Farm Renters Policy; 3) a State Farm Condominium Unit Owners Policy; and 4) a State Farm Personal Liability Umbrella Policy. A Business Liability Policy

was issued to Fidelity. Finally, a Condominium/Association Policy and a secondary Commercial Liability Umbrella Policy were issued to the Association.

## II. Procedural History

On February 10, 2004, Plaintiff filed its Complaint for Declaratory Judgment.

On March 8, 2004, Defendant Richard H. Thomason filed an Answer to Plaintiff's Complaint.

On April 19, 2004, Default was entered by the Clerk against Defendants Richelle M. Thomason and Fidelity Management, Inc. as to Plaintiff's Complaint.

On May 7, 2004, Plaintiff filed a Scheduling Conference Statement.

On May 7, 2004, Default was entered by the Clerk against Defendant The Association of Apartment Owners of Twin Towers, Inc. as to Plaintiff's Complaint.

On October 5, 2005, a Stipulation and Order by this Court setting aside the default judgment of Defendant The Association of Apartment Owners of Twin Towers, Inc. was filed. Also on October 5, 2005, a Stipulation and Order by this Court extending the dispositive motions deadline was filed.

On October 25, 2005, Defendant The Association of Apartment Owners of Twin Towers, Inc. filed an Answer to Plaintiff's Complaint.

On November 1, 2004, Plaintiff filed its Motion for Summary Judgment as to Defendant The Association of Apartment Owners of Twin Towers, Inc. and for Default Judgment as to Defendants Richelle M. Thomason and Fidelity management, Inc. Plaintiff also filed, on November 1, 2004, a separate Motion for Summary Judgment as to Defendant Richard H. Thomason.

On February 10, 2005, Plaintiff withdrew its Motion for Summary Judgment as to Defendant Richard H. Thomason.

On February 22, 2005, the Court heard Plaintiff's Motion. Defendant The Association of Apartment Owners of Twin Towers, Inc. failed to make an appearance.

## STANDARD

### I. Summary Judgment

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Summary judgment is therefore appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[2] Fed. R. Civ. P. 56(c).

---

[2] Affidavits made on personal knowledge and setting forth facts as would be admissible at trial are evidence. Fed. R. Civ. P. 56(e). Legal memoranda and oral argument are not evidence and do not create issues of fact. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case. A genuine issue of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[3] Thrifty Oil Co. v. Bank of America Nat'l Trust & Sav. Ass'n, 310 F.3d 1188, 1194 (9th Cir. 2002) (quoting Union School Dist. v. Smith, 15 F.3d 1519, 1523 (9th Cir. 1994)) (internal citations omitted). Conversely, where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the Court as to the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party may do so with affirmative evidence or by "'showing' — that is pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. All evidence and reasonable inferences drawn therefrom are considered in the light most favorable to the nonmoving party. See, e.g., T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987). The Court's role is not to make

---

[3] Disputes as to immaterial issues of fact do "not preclude summary judgment." Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1478 (9th Cir. 1986).

6

credibility assessments. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Id</u>. at 250-51. Once the moving party satisfies its burden, however, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. <u>See</u> <u>Celotex</u>, 477 U.S. 322-23; <u>Matsushita Elec.</u>, 475 U.S. at 586; <u>California Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.</u>, 818 F.2d 1466, 1468 (9th Cir. 1987). Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact. <u>Villiarmo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1061 (9th Cir. 2002); <u>see also</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. The nonmoving party must instead set forth "significant probative evidence tending to support the complaint." <u>T.W. Elec. Serv.</u>, 809 F.2d at 630. Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. <u>See</u> <u>Celotex</u>, 477 U.S. at 322.

**II. Default Judgment**

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these

rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Furthermore, Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter default judgment upon application by the party entitled to judgment by default.

## DISCUSSION

### I. Summary Judgment as to Defendant The Association of Apartment Owners of Twin Towers, Inc.

The Court finds that Plaintiff is not obligated to defend or indemnify Defendant Richelle and/or Defendant Fidelity under any of the policies that could arguably provide coverage. There are seven policies of coverage at issue. Four of the policies were issued to Richard and Richelle: 1) a State Farm Homeowners Policy; 2) a State Farm Renters Policy; 3) a State Farm Condominium Unit Owners Policy; and 4) a State Farm Personal Liability Umbrella Policy. A Business Liability Policy was issued to Fidelity. Finally, a Condominium/Association Policy and a secondary Commercial Liability Umbrella Policy were issued to the Association. The Court finds that coverage for the alleged wrongdoings of Richelle and Fidelity cannot be established because (1) there is no covered loss within the meaning of any of the policies, (2) exclusions from coverage apply, and (3) Richelle and Fidelity have forfeited any right they may have had to coverage because they violated provisions of

the policies.

1) **No Covered Loss**

There was no covered loss within the meaning of any of the policies. Each of the policies provides coverage for property damage caused by an "occurrence." Occurrence is defined as an accident. The Supreme Court of Hawaii construes the occurrence-accident requirement to mean that injuries are compensable only if they were neither expected nor intended from the standpoint of the insured. Hawaiian Holiday Macadamia Nut Company, Inc. v. Industrial Indemnity Co., 872 P.2d 230, 234 (Haw. 1994). In Burlington Insurance Co. v. Oceanic Design and Construction, Inc., 383 F.3d 940, 948 (9th Cir. 2004) (citations omitted), the United States Court of Appeals for the Ninth Circuit recently reaffirmed that "[i]n Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions.'"

The acts of Richelle and Fidelity were intentional and were not the product of negligence. The 2001 Complaint alleges injury as the result of intentional acts: depositing funds due to the Association into Fidelity's account, misappropriation of funds, fraudulent concealment of misappropriation in reports given to the Association. Richelle's actions were purposeful and did not arise from the want of care normally understood to characterize negligence. Richelle's intentional acts should also be

attributed to Fidelity because Richelle was one of only two officers of Fidelity, the misappropriated funds were deposited into Fidelity's account, and Fidelity stipulated to judgment against it for Richelle's fraud and thus admitted responsibility.

2) **Exclusions from Coverage**

Several exclusions from coverage apply to the acts of Richelle and Fidelity. The most important exclusion contained within all of the policies is for intentional acts. The intentional act exclusion excludes from coverage any damage which was expected or intended from the point of view of the insured. This Court has previously explained that "[a]n insurance policy's exclusion of coverage for damage caused by the intentional acts or omissions of an insured is consistent with the sound public policy that a wrongdoer should not profit from his own wrongdoing or be indemnified against the effects of his wrongdoing." Allstate Insurance Co. v. Kim, 121 F. Supp. 2d 1301, 1306 (D. Haw. 2000).

All four of the Thomasons' policies (Homeowners, Renters, Condominium, and Personal Liability Umbrella Protection) exclude coverage for injuries caused by the business pursuits of the insured. The policies define "business" as a "trade, profession or occupation." The wrongful acts of Richelle fall within the business pursuits exclusion because they occurred in the course of her occupation. All four of the Thomasons' policies as well

as the Fidelity and the Association's Condominium/Association Policy exclude coverage for injuries caused by professional services. Since the 2001 Complaint alleges that Richelle was retained to serve as a property manager, her actions would fall within the Professional Services Exclusion.

Option DO of the Association Policy excludes from coverage any dishonest, fraudulent, criminal, or malicious act. The exclusion applies to the facts at hand because Richelle's misappropriation of the Association's funds was a criminal act, and Richelle was convicted of theft in the first degree with respect to criminal charges involving her conduct at Twin Towers. On June 24, 2003, she was ordered to pay restitution of $105,688.17 to the Association. (Ex. K of P.'s Concise Statement of Facts).

Finally, none of the policies includes coverage for punitive damages. See Haw. Rev. Stat. 431:10-240 (2003) (stating that, "[c]overage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included."). Thus, there is no coverage for any claim for punitive damages.

3) **Violation of Policies' Provisions**

Each of the policies requires the insured to give Plaintiff notice of suit and each further provides that the insured "shall not, except at the insured's own cost, voluntarily assume

obligations or incur expenses." Thus, Richelle and Fidelity are also not entitled to coverage because they violated this condition of the policies. The policies require that the insured provide "prompt" notice of an occurrence, claim, or suit and "immediately" forward copies of any suit papers received. Plaintiff alleges that Fidelity and Richelle never gave notice of the claim or suit against them and never forwarded any information relating to the legal action. Plaintiff also alleges that it learned of the case from the Association *after* Fidelity and Richelle had stipulated to judgment. (Decl. of Jennifer Wilson attached to P.'s Sep. Concise Statement of Facts at ¶11). Thus, Richelle and Fidelity violated a provision of each of the policies and accordingly are not entitled to coverage.

**II. Default Judgment as to Defendants Richelle M. Thomason and Fidelity Management, Inc.**

On April 19, 2004, Default was entered by the Clerk as to Defendants Richelle M. Thomason and Fidelity Management, Inc. as to Plaintiff's Complaint. Richelle and Fidelity have not sought to set aside the defaults entered against them. The Court finds, pursuant to Federal Rule of Civil Procedure 55(b)(2), that Plaintiff is entitled to judgment by default and and accordingly enters default judgment against Defendants Richelle M. Thomason and Fidelity Management, Inc.

## Conclusion

The Court GRANTS Plaintiff State Farm Fire & Casualty Company's Motion for Summary Judgment as to Defendant the Association of Apartment Owners of Twin Towers, Inc. because the Court finds that there is good cause for the Motion based on the reasons stated above and, alternatively, because the Association does not oppose Plaintiff's Motion. The Court also GRANTS Plaintiff's Motion for Default Judgment as to Defendants Richelle M. Thomason and Fidelity Management, Inc.

IT IS SO ORDERED.

DATED: FEB 2 2 2005, Honolulu, Hawaii.

_____
UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT THE ASSOCIATION OF APARTMENT OWNERS OF TWIN TOWERS, INC. AND GRANTING MOTION FOR DEFAULT JUDGMENT AS TO DEFENDANTS RICHELLE M. THOMASON AND FIDELITY MANAGEMENT, INC.: STATE FARM FIRE & CASUALTY CO. V. RICHELLE M. THOMASON, RICHARD H. THOMASON, FIDELITY MANAGEMENT, INC., AND THE ASSOCIATION OF APARTMENT OWNERS OF TWIN TOWERS, INC., Civ. No. 04-00100 (ACK/BMK).

F I L E   C O P Y

\* \* LABEL LIST \* \*

Case Number:1:04-cv-00100

Richard B. Miller, Esq.
Tom Petrus & Miller LLLC
Finance Factors Center
1164 Bishop St Ste 650
Honolulu, HI  96813

Patricia K. Wall, Esq.
Tom Petrus & Miller LLLC
Finance Factors Center
1164 Bishop St Ste 650
Honolulu, HI  96813

Richard H. Thomason, Esq.
733 Bishop St Ste 2301
Honolulu, HI  96813

Carl D. Soto, Esq.
1717 Mott-Smith Dr Ste 2406
Honolulu, HI  96822